UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>              Plaintiff,<br><br>    v.<br><br>GINA RAIMONDO, et al.,<br><br>              Defendants. | Case No. 3:22-cv-00117-JD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Center for Biological Diversity (CBD) has sued defendants National Marine Fisheries Service and Secretary of Commerce Gina Raimondo (collectively, NMFS) under the Marine Mammal Protection Act (MMPA), 16 U.S.C. § 1361 *et seq.*, and the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq.* The case concerns commercial fishing operations in the Washington/Oregon/California sablefish pot fishery. Sablefish is a bottom-dwelling species that is valued as a consumer delicacy. To harvest the fish, approximately 150 commercial fishing vessels deploy tens of thousands of pots that "sit on the bottom of the ocean and are connected to each other in approximately two-mile-long strings of 15 to 50 pots." Dkt. No. 1 ¶¶ 4, 69-70. Local populations of humpback whales, including ESA-listed endangered and threatened populations, can become entangled with the fishing gear used in the pot fishery, which causes injury and on occasion death. *See id.* ¶¶ 60-61, 75; *see also* MMPA 000453; BiOp 000124-25.

The case presents a straightforward challenge by CBD to the issuance of a permit by NMFS in 2021 that authorized the incidental taking of ESA-listed humpback whales in the pot fishery, a challenge that both parties agree is timely under the MMPA. *See* Dkt. No. 283 at 7 n.5; Dkt. No. 284 at 1 n.1. CBD says that the permit was unlawful because NMFS did not first ensure

that a take reduction plan for the whales had been developed or was being developed, as required by the MMPA. *See* Dkt. No. 282 at 11. NMFS says that it simply lacks the funding to develop and implement take reduction plans for all marine mammal species and stocks that are entitled to one, and consequently a statutory exception applies to relieve the agency of its obligation to develop a plan in this case. *See* Dkt. No. 283 at 22.

The parties have filed cross-motions for summary judgment, which the Court found suitable for decision without oral argument under Civil Local Rule 7-1(b). Dkt. Nos. 282, 283, 287. The parties' familiarity with the record is assumed, and CBD's motion is granted in part. The Court defers consideration of the appropriate remedy, as well as CBD's challenge to the 2020 biological opinion that NMFS relied upon in issuing the incidental take permit, pending further proceedings.[1]

## LEGAL STANDARDS

Under the deferential standard of the Administrative Procedure Act (APA), an agency action will be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1256-57 (9th Cir. 2017). The ESA and MMPA allow citizens to sue, but "lack independent judicial review provisions." *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 733 (9th Cir. 2020). Consequently, the Court reviews these claims under Section 706 of the APA. *See id.*; *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012).

An agency action is arbitrary and capricious "if the agency has: relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

---

[1] The timeliness of CBD's challenge to the biological opinion is disputed. *See* Dkt. No. 283 at 7; Dkt. No. 284 at 7. NMFS says CBD is in effect challenging "NMFS's authorization and management of the fishery," which came about as a result of several rulemakings under the Magnuson-Stevens Fishery Conservation and Management Act (MSA), 16 U.S.C. § 1801 *et seq.*, *see* Dkt. No. 283 at 7-8, and so the 30-day statute of limitations period in the MSA applies, *see id.* at 7 (citing 16 U.S.C. § 1855(f)). CBD says the MMPA permit challenge is timely and that "NMFS stated it relied on the Biological Opinion in issuing the Permit." Dkt. No. 284 at 8. In light of the determination here that the permit was unlawfully issued, and the possibility that CBD would obtain all the relief to which it is entitled through vacatur of the permit, it may not be necessary to ultimately resolve this timeliness dispute.

2

1    agency, or is so implausible that it could not be ascribed to a difference in view or the product of
2    agency expertise." *Ctr. for Cmty. Action & Env't Just. v. FAA*, --- F.4th ----, 2023 WL 2213470,
3    at *4 (9th Cir. Feb. 24, 2023); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.
4    Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The Court's deference extends to less than stellar work
5    by an agency, so long as its analytical path and reasoning can be reasonably discerned."
6    *Ecological Rts. Found. v. FEMA*, 384 F. Supp. 3d 1111, 1119 (N.D. Cal. 2019) (citing *San Luis v.
7    Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 627 (9th Cir. 2014)); *see also Friends of Del
8    Norte v. Cal. Dep't of Transp.*, No. 18-cv-00129-JD, 2023 WL 2351649, at *5 (N.D. Cal. Mar. 3,
9    2023).

10   Summary judgment is an appropriate procedure for resolving plaintiffs' challenges. *See
11   Nw. Motorcycle Ass'n v. USDA*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); *Friends of Del Norte*,
12   2023 WL 2351649, at *5. Summary judgment may be granted when there is no genuine issue of
13   material fact and the moving party is entitled to judgment as a matter of law. *See Ecological Rts.
14   Found.*, 384 F. Supp. 3d at 1119; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## DISCUSSION

Two statutory regimes, the ESA and the MMPA, frame the analysis. The ESA was enacted to protect and conserve endangered and threatened species and their habitats, and embodies "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1084 (9th Cir. 2017) (quoting *TVA v. Hill*, 437 U.S. 153, 185 (1978)); *see also Friends of Gualala River v. Gualala Redwood Timber, LLC*, 552 F. Supp. 3d 924, 931 (N.D. Cal. 2021). It authorizes the Secretaries of Commerce and the Interior, through their agencies, to list plants and animals for protection and to designate critical habitats. *See Ecological Rts. Found.*, 384 F. Supp. 3d at 1115 (citing 16 U.S.C. § 1533). "The ESA imposes a variety of procedural and substantive requirements to ensure that the actions of federal agencies do not harm listed species or critical habitats." *Id.* (citing, *e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 652 (2007)). The relevant stock of humpback whales in this case includes two distinct population segments that are listed as endangered or threatened. *See* MMPA 000022.

The MMPA "generally prohibits any individual from 'taking' a marine mammal, defined as harassing, hunting, capturing, or killing it." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 15 (2008) (citing 16 U.S.C. §§ 1362(13), 1372(a)). The take prohibition admits of several exceptions, including one for "incidental take in the course of commercial fishing," which is relevant here. *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 899 (9th Cir. 2012) (citing 16 U.S.C. § 1371(a)(1)-(2)).

ESA-listed marine mammals enjoy enhanced protection under the MMPA. Before issuing a permit to authorize for up to three years the incidental taking of listed marine mammals in commercial fishing operations, the MMPA requires NMFS to make the following determinations after a notice-and-comment period:

(I)   the incidental mortality and serious injury from commercial fisheries will have a negligible impact on such species or stock;

(II)  a recovery plan has been developed or is being developed for such species or stock pursuant to the [ESA]; and

(III) where required under section 1387 of this title, a monitoring program is established under subsection (d) of such section, vessels engaged in such fisheries are registered in accordance with such section, and a take reduction plan has been developed or is being developed for such species or stock.

16 U.S.C. § 1371(a)(5)(E)(i).

At issue here are the take reduction plans. Under Section 1387(f)(1), NMFS is required to "develop and implement a take reduction plan" for all "strategic stocks" -- which by definition includes all ESA-listed marine mammal stocks, *see id.* § 1362(19)(C) -- that interact with commercial fisheries that cause at least "occasional incidental mortality and serious injury of marine mammals," *id.* § 1387(c)(1)(A)(ii). These fisheries are classified as Category I or II fisheries, and the sablefish pot fishery is in Category II. *See* MMPA 000001. The MMPA sets a goal of reducing, within five years of implementing a take reduction plan, "the incidental mortality or serious injury of marine mammals incidentally taken in the course of commercial fishing operations to insignificant levels approaching a zero mortality and serious injury rate, taking into account the economics of the fishery, the availability of existing technology, and existing State or regional fishery management plans." 16 U.S.C. § 1387(f)(2).

4

There is no dispute that NMFS issued the 2021 incidental take permit for the sablefish pot fishery without developing, or even starting to work on, a take reduction plan for the humpback whales. *See* Dkt. No. 284 at 3; Dkt. No. 285 at 12-14. NMFS's own assessment of its compliance with Section 1371(a)(5)(E) concluded that the take reduction plan requirements were satisfied because a plan was "on the priority list for development," even though it was not "complete" or "underway." MMPA 000022.

This assessment overtly conflicts with the statutory requirement that "a take reduction plan has been developed or is being developed for" the ESA-listed humpback whales. 16 U.S.C. § 1371(a)(5)(E)(i)(III). The main point of contention between the parties is whether Section 1387(f) lets NMFS off the hook. The parties agree that the phrase "where required under section 1387" applies to all the provisions in Section 1371(a)(5)(E)(i)(III). *See* Dkt. No. 284 at 5-6; Dkt. No. 285 at 12. NMFS says that it was not required under Section 1387 to develop a take reduction plan because it lacked the funding to do so. *See* Dkt. No. 283 at 22. It says that the MMPA expressly contemplates this situation:

> If there is insufficient funding available to develop and implement a take reduction plan for all such stocks that interact with commercial fisheries [that cause at least occasional incidental mortality and serious injury of marine mammals], the Secretary shall give highest priority to the development and implementation of take reduction plans for species or stocks whose level of incidental mortality and serious injury exceeds the potential biological removal level, those that have a small population size, and those which are declining most rapidly.

16 U.S.C. § 1387(f)(3). In the view of NMFS, this provision "allows [it] to set priorities for developing take reduction plans and 'not develop a reduction plan at all if there is insufficient funds.'" Dkt. No. 283 at 22 (quoting *Kohola v. Nat'l Marine Fisheries Serv.*, 669 F. Supp. 2d 1182, 1191 (D. Haw. 2009), *vacated as moot*, 439 F. App'x 618 (9th Cir. 2011)).[2] Plaintiffs

---

[2] NMFS has not argued that its interpretation of Section 1387(f)(3) is entitled to any measure of deference, whether under the doctrines of *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984) or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). In any event, its interpretation could not make it past *Chevron* step one, "which asks whether the statute is ambiguous." *Nat. Grocers*, 2022 WL 4227248, at *11. As discussed in an ensuing section, Congress has spoken clearly in the relevant sections of the MMPA, and "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Corrigan v. Haaland*, 12 F.4th 901, 907 (9th Cir. 2021) (internal quotations and citation omitted).

5

1    respond that the "'where required under section 1387' phrase . . . refers only to the limited

2    situation in which section [1387] does not require a take reduction plan for ESA-listed marine

3    mammals -- when fisheries interact with them 'infrequently.'" Dkt. No. 284 at 5-6.

4          This is a question of statutory interpretation, and as in all such cases, "[o]ur analysis begins

5    and ends with the text." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553

6    (2014); *see also Michigan v. DeVos*, 481 F. Supp. 3d 984, 991 (N.D. Cal. 2020). "The Court gives

7    Congress's words their ordinary and everyday meaning, and may consult dictionary definitions to

8    ensure a plain interpretation." *Nat. Grocers v. Vilsack*, No. 20-cv-05151-JD, --- F. Supp. 3d ----,

9    2022 WL 4227248, at *9 (N.D. Cal. Sept. 13, 2022) (citing *City of Los Angeles v. Barr*, 941 F.3d

10   931, 940 (9th Cir. 2019)). The "inquiry must cease if the statutory language is unambiguous" and

11   "the statutory scheme is coherent and consistent." *Schindler Elevator Corp. v. United States ex*

12   *rel. Kirk*, 563 U.S. 401, 412 (2011) (internal quotations and citation omitted). "When construing a

13   statute, a virtuoso feat of analysis is neither required nor particularly useful." *DeVos*, 481 F. Supp.

14   3d at 991. The ultimate goal of statutory construction is to effectuate Congress's intent in enacting

15   the statute. "In every case, 'it is the intent of Congress that is the ultimate touchstone.'" *Barr*, 941

16   F.3d at 940 (quoting *Arizona v. United States*, 567 U.S. 387, 453 (2012) (Alito, J., concurring in

17   part and dissenting in part)). The Court bears "the conventional judicial duty to give faithful

18   meaning to the language Congress adopted in the light of the evident legislative purpose in

19   enacting the law in question." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex*

20   *rel. Wilson*, 559 U.S. 280, 298 (2010) (internal quotations and citation omitted); *see also Nat.*

21   *Grocers*, 2022 WL 4227248, at *9.

22         CBD has the better reading of the MMPA. Section 1387 directs that NMFS "*shall* develop

23   and implement a take reduction plan" for strategic stocks in commercial fisheries that involve

24   occasional incidental mortality or serious injury to marine mammals. 16 U.S.C. § 1387(f)(1)

25   (emphasis added). That fits to a tee the ESA-listed humpback whales and pot fishery here. The

26   same provision states that NMFS "*may* develop and implement" take reduction plans for non-

27   strategic stocks that interact with fisheries that cause frequent incidental mortality and serious

28   injury. *Id.* (emphasis added). It also bears mention that Section 1387(f)(1) does not authorize take

reduction plans for marine mammal stocks, listed or not, that interact with fisheries which pose only "a remote likelihood of or no known incidental mortality or serious injury of marine mammals." *Id.* § 1387(c)(1)(A)(iii).[3]

The difference between the mandatory "shall" and the discretionary "may" in Section 1387(f)(1) is obvious. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty."). Consequently, under the plain language of Section 1387(f)(1), a take reduction plan was "required" in this case.

The fact that NMFS has some room for prioritizing the order in which to develop and implement take reduction plans does not point to a different conclusion. The statute uses the phrase, "shall give highest priority," which means in ordinary usage "to deal with or do (something) first." *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/give%20priority (last visited Mar. 13, 2023). It may be that several mandatory tasks can be ranked in order of completion, but the mandatory quality remains unchanged. Nothing about the prioritization process transforms a mandatory duty into a discretionary one.

NMFS's reading of Section 1387 would also create unnecessary conflicts within the statute. For example, another provision in Section 1387 authorizes NMFS to create "take reduction teams." 16 U.S.C. § 1387(f)(6). These are advisory groups composed of representatives from stakeholder organizations who serve without compensation to help draft take reduction plans, among other duties. *See id.* § 1387(f)(6)-(8). NMFS "may request a take reduction team to address a stock that extends over one or more regions or fisheries, or multiple stocks within a region or fishery, if [it] determines that doing so would facilitate the development and implementation of plans required under this subsection." *Id.* § 1387(f)(6)(B). Interpreting "required" here to mean, as NMFS would have it, only those plans for which it has sufficient funding would make little sense. The provision clearly contemplates that all the take reduction

---

[3] These are known as Category III fisheries. *Id.* § 1387(f)(1). The sablefish fishery is a Category II fishery not subject to this exemption.

7

1  plans called for in Section 1387(f)(1) are "required," and provides NMFS with a tool to marshal its
2  limited resources to develop the plans.
3        Because the "where required under section 1387" condition in the ESA-listed incidental
4  take permit provision was satisfied, NMFS could have lawfully issued the 2021 permit only if it
5  determined that a take reduction plan "has been developed or is being developed" for the
6  humpback whales. *Id.* § 1371(a)(5)(E)(i)(III). This is an additional requirement above and
7  beyond what is mandated by Section 1387(f). Even though Section 1387(f) covers most of the
8  requirements and timing of take reduction plans, it applies in tandem with Section 1371(a)(5)(E).
9  *See id.* § 1387(a)(2) ("In the case of the incidental taking of marine mammals from species or
10 stocks designated under this chapter as depleted on the basis of their listing as threatened species
11 or endangered species under the [ESA], both this section and section 1371(a)(5)(E) of this title
12 shall apply."). And while the insufficient funding provision in Section 1387(f)(3) may provide the
13 government with some relief from complying with all the deadlines for developing take reduction
14 plans -- a question that need not be resolved in this dispute -- the bottom line is that NMFS cannot
15 indefinitely delay developing a take reduction plan while continuing to authorize Section
16 1371(a)(5)(E) permits for the incidental take of endangered and threatened humpback whales.
17       Consequently, NMFS's conclusion that the requirements of Section 1371(a)(5)(E) were
18 satisfied without a take reduction plan being under development was arbitrary and capricious. The
19 authorization of the 2021 permit for the incidental taking of humpback whales at the pot fishery
20 was unlawful.

**CONCLUSION**

22 Summary judgment is granted to CBD on its second claim that NMFS violated the MMPA
23 and APA by issuing the 2021 incidental take permit.
24       The parties' briefing suggested a question of whether CBD may challenge NMFS's 2020
25 biological opinion independent of the 2021 permit. *See* Dkt. No. 283 at 9; Dkt. No. 284 at 8.
26 NMFS has also requested the opportunity to provide separate briefing on remedies if CBD
27 prevailed on any of its claims, as is the case here. *See* Dkt. No. 283 at 25; Dkt. No. 285 at 15. A

status conference is set for April 20, 2023, at 10:00 a.m., to discuss these issues and the next steps in this case.

**IT IS SO ORDERED.**

Dated:  March 14, 2023

_____
JAMES DONATO
United States District Judge